# COURT OF ERRORS AND APPEALS.

---

**PETER C. ONDERDONK, APPELLANT, AND HIRAM HUTCHIN-SON, RESPONDENT.**

R. had, during the continuance of a partnership between H. and O., loaned money, from time to time, to the firm, for which he charged and received the interest; and had also, from time to time, endorsed notes for the firm, which were paid by the firm. On the dissolution of the partnership, the settlement of its affairs devolved on O., and in an account subsequently presented by him to H., he claimed an allowance of $500 for R., for endorsing for the firm, and claimed that he and H. had agreed to make the said allowance to R. The court made the allowance.

---

This case is reported *ante p.* 277.

*J. Vandyke,* for the appellant.

*P. D. Vroom,* for the respondent.

OGDEN, Justice, delivered the opinion of the court.

The parties in this suit entered into a co-partnership in the city of New Brunswick, about the 15th of December, 1835, in the india rubber manufacturing business. On the 18th of June, 1840, an agreement for dissolution was executed by them, and a dissolution actually effected on the 24th of December in that year.

On the 30th of June, 1842, Hutchinson filed a bill against Onderdonk, in the Court of Chancery, praying, among other

things, for an account and for a settlement of their partnership transactions.

Upon the coming in of the answer, a general replication was filed, and, by consent of the parties, a reference was made, on the 6th of April, 1843, to Joseph F. Randolph, Esq., a master of the court, to take the account, with directions, in so doing, to make the parties all just allowances.

The master commenced his duties thereon, upon the 17th of the same month, and, after a laborious examination of their books and of the papers exhibited to him, and of the testimony of witnesses produced by them, he made a report, on the 31st of May, 1843, showing a balance due to Hutchinson, on that day, for principal and interest, of $113.01.

Both parties excepted to this report, and, in settling those exceptions, the Chancellor, on the 21st of March, 1848, directed that the report should be corrected on both sides; that the sum of $168.09 should be allowed to Onderdonk for commissions, " by way of compensation for his services in settling the business of the said firm," which claim had been refused by the master, and that $21.50 of $43, reported by the master to have been paid by Onderdonk to Hutchinson, and the further sum of $515, reported by the master to have been paid by Onderdonk to one Peter P. Runyon, as a debt of the firm, should be disallowed, and that the report should be corrected, by adding these sums, less the commissions allowed by him, as above stated, to the amount ascertained by the master to be due to Hutchinson, thereby changing the principal sum to be paid by Onderdonk, from $113.01 to $481.42, and decreed that the same should have interest from the third Tuesday of December, 1845.

Onderdonk has appealed to this court, from that decree, and hath set forth, in his petition, that the decree is erroneous, in that it disallowed the sum of $21.50, as a payment by him to Hutchinson, and also in that it disallowed the sum of $515, paid by him, on account of the firm, to Peter P. Runyon.

The correctness of the Chancellor's conclusion respecting the allowance, by the master, of $43, depends entirely upon the manner in which, in taking the accounts, the master charged the appellant.

It appears, by the bill and answer, that at or about the time of the dissolution of the firm, "an inventory was made out of the claims and demands of the co-partnership," &c., intended to embrace all their claims, demands, and choses in action, and that a copy thereof was set out in a schedule marked A, annexed to the bill of complainant. That such inventory, and the claims and demands and assets, were taken, by the appellant, for the joint use and benefit of the parties. After this arrangement was made, the respondent received, from one or more debtors of the late firm, the sum of $43, which moneys the master charged to him as so much cash paid by the appellant. If the master charged the appellant *only* with the moneys which he actually received, the Chancellor is right in the correction, but if he charged him with the inventory, the Chancellor has erred.

By reference to the report, we read that the master found that the appellant, subsequent to the dissolution, received of the debts and effects due and belonging to the late firm, the sum of $5603.13, as per Schedule I more fully appears. "That the said sum embraces all the moneys and effects of the partnership, which came to the hands of the defendant, and all the moneys and effects of the firm for which he should be made accountable. That the Schedule No. I embraces a list of all the accounts and notes specified in the bill, answer, and schedule thereto annexed in the charge filed with the master, and in Exhibit B on the part of the complainant, being a receipt of the defendant for the amount of the notes of the firm taken by him to collect, and also of the moneys of the firm not specified in said schedules and receipts that have been collected by the defendant, as admitted by him or proved by the evidence, except such notes," &c., which exceptions do not touch or affect the question under consideration in this court.

It is evident, from the above explanation by the master of the character of his schedule, that it embraces all the claims due to the firm not specially excepted in the report, and hence, as the appellant was charged *with them* in reaching the balance reported against him, he was entitled to receive the benefit of them. The respondent, having collected $43 of these claims, should, under the circumstances of the dissolution, either have handed the mo-

ney to the appellant, or have given him credit for the full amount thereof.

Upon this point we are of opinion that the master was correct in considering the $43 as so much money paid by the appellant to the respondent, and that the Chancellor erred in disturbing that part of the report.

Again. Was the payment claimed by the appellant to have been made by him to Peter P. Runyon rightly allowed to him by the master?

Mr. Runyon was the father-in-law of the appellant, and had been a fast friend of both parties during their connection in business. He had largely endorsed for them, and loaned them moneys, and had otherwise aided in carrying them through the troubles of those difficult times.

Mr. Runyon was examined as a witness by the appellant before the master, and upon his cross-examination he testified, among other things, that he expected some remuneration for his risk, independent of his interest money, if the experiment was successful.

Upon his re-examination-in-chief, he said $500 *was paid* to him for his risk by the agreement of both parties; and upon further cross-examination he stated that *at first* no specific sum was agreed on for his risk; that the $500 was agreed on some time during the progress of the dissolution; that *he* offered to take a portion of the profits, or a specified sum, and that the complainant (who is this respondent) said it had better be a specific sum; that witness proposed *this amount*, and it was agreed to; that they agreed to it cheerfully, and particularly the complainant.

With the pleadings in the cause and this testimony before him, the master allowed the appellant a credit of $500, as due to Mr. Runyon on the 1st of July, 1840, and computed interest upon it to the 1st of January, 1841, to which date Mr. Runyon's account with the firm was made up.

This transaction does not appear to the court in the same light it was viewed by the Chancellor. A competent, intelligent and unimpeached witness has testified that the parties appreciated the services which he had rendered them; that between June 1st,

and December 24th, 1840, they both agreed that he should have a compensation for those services; that after propositions had passed between them, he named the sum of $500; that both cheerfully agreed to it, and particularly the respondent, and further that the money had been *paid* to him by the appellant.

We are clearly of opinion that this allowance was rightly made by the master, and that the report in that particular also was erroneously corrected.

The opinion of the court is, that so much of the Chancellor's decree as directs that the sums of $21.50 and $515, making together the sum of $536.50, be added to the amount ascertained by the master to be due to the complainant, be reversed, and that the master's report upon these items be confirmed; and that so much of the said decree as fixes the amount due to the respondent at $546.40, be also reversed, without costs.

Let the cause be remitted to the court below, to be proceeded in there according to law and the rules of that court.

*Per tot. cur.*

Decree reversed.